IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| WILLIE RENARD ANDERSON, JR #2094132, §<br>PETITIONER, § § §<br>v. §<br>§<br>LORIE DAVIS, DIRECTOR, TEXAS §<br>DEPARTMENT OF CRIMINAL JUSTICE, §<br>CORRECTIONAL INSTITUTIONS DIV., §<br>RESPONDENT. § | CIVIL NO. 3:19-CV-2915-C-BK |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Willie Renard Anderson, Jr.'s petition for habeas corpus under 28 U.S.C. § 2254 was referred to the United States magistrate judge for case management, including the issuance of findings and a recommended disposition where appropriate. As detailed herein, the petition should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**I.     BACKGROUND**

On September 23, 2016, a jury convicted Anderson of aggravated assault with a deadly weapon causing serious bodily injury on a family member with an enhancement paragraph for a prior murder conviction. *The State of Texas v. Willie Renard Anderson*, No. F-1600644-V (292nd Jud. Dist. Ct., Dallas, Tex. Sept. 23, 2016); Doc. 3 at 2; Doc. 17-1 at 3. He was sentenced to life imprisonment. Doc. 17-1 at 3. The judgment was affirmed on direct appeal. *See Anderson v. State*, No. 05-16-01157-CR, 2017 WL 5897903, at *7-8 (Tex. App.—Dallas No. 29, 2017, pet ref'd) (mem. op., not designated for publication). The Texas Court of Criminal

Appeals (TCCA) subsequently refused his petition for discretionary review on March 21, 2018. *Anderson v. State*, No. PD-0134-18 (Tex. Crim. App. 2018). Anderson then petitioned the TCCA for a writ of habeas corpus, which was denied without written order on November 20, 2019. *See Ex parte Anderson,* WR-19, 001-04 (Tex. Crim App. Nov. 20, 2019); Doc. 17-1 at 11.

On December 10, 2019, Anderson filed the instant *pro se* federal habeas petition, alleging that his counsel was ineffective, that he is actual innocent, that his Due Process rights were violated because of a non-unanimous jury verdict, that he was convicted through insufficient evidence, that the prosecution engaged in misconduct, and that the trial court lacked jurisdiction because of defects in the grand jury proceedings. *See* Doc. 3 at 6-15. For the reasons detailed *infra*, Anderson is not entitled to relief.

II.    **FEDERAL HABEAS CORPUS PROCEEDINGS**

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. When reviewing state proceedings, a federal court does not sit as super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986). A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

Federal habeas corpus relief for state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The provisions of Section 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the

claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *see also Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011). A petitioner must show there was no reasonable basis for the state court to deny relief. *Id.* at 98.

A federal district court must be deferential to state court findings supported by the record. *See Pondexter v. Dretke*, 346 F.3d 142, 149-152 (5th Cir. 2003). The AEDPA has modified a federal habeas court's role in reviewing state prisoner applications to prevent federal habeas "retrials" and to ensure that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693 (2002). A state application that is denied without written order by the Texas Court of Criminal Appeals ("CCA") is an adjudication on the merits. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Indeed, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 99.

A state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness also applies to unarticulated findings that are necessary to the state court's conclusions of mixed law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001).

### A. Ineffective Assistance of Counsel

Anderson alleges that his trial counsel was ineffective for failing to (1) fully investigate the case, (2) obtain expert testimony to rebut the State's expert testimony, (3) present a complete defense, (4) file a motion to obtain DNA results, and (5) object to the jury charge. Doc. 3 at 6, 13-15. Anderson also alleges that his appellate counsel was ineffective for failing to challenge the grand jury's jurisdiction and the trial court's evidentiary ruling regarding witness bolstering. Doc. 3 at 13.

### i. *Applicable Law*

To establish ineffective assistance of trial counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, a petitioner must show that his attorney's actions "fell below an objective standard of reasonableness." *Id.* at 688. In evaluating an attorney's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," or that "under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689.

Under *Strickland's* prejudice prong, a petitioner additionally must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability

4

sufficient to undermine confidence in the outcome. *Id.* Petitioner must "affirmatively prove, not just allege, prejudice." *Id.* at 693. If he fails to prove the prejudice component, the court need not address the question of counsel's performance. *Id.* at 691. Additionally, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

In addition, the Court reviews claims of ineffective assistance of counsel under a "doubly deferential" standard, taking "a 'highly deferential' look at counsel's performance, [under *Strickland v. Washington*, 466 U.S. 668, 689 (1984))], through the 'deferential lens of § 2254(d).'" *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (citations omitted). Considering the deference afforded by Section 2254(d)(1), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

### (ii)   *Failure to Investigate*

Anderson claims that his trial counsel was ineffective for failing to "fully investigate this instant case." Doc. 3 at 6. But he provides no further details in his petition. In his reply brief, Anderson asserts that his trial counsel "never inquired of anyone who may have knowledge about his client's innocence," nor did he investigate any of the witnesses. Doc. 23 at 13.

In general, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "[A]n attorney must engage in a reasonable amount of pretrial investigation and 'at a minimum…interview potential witnesses and…make an independent investigation of the facts and circumstances in the case.'" *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994) (quoting *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985)).

As for prejudice in the failure-to-investigate context, "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Anderson wholly fails to make that showing here. He does not detail what further investigation would have revealed or how it would have altered the outcome of the trial. Thus, the TCCA did not unreasonably apply *Strickland* in rejecting his failure-to-investigate IAC claim.

### (iii)   *Failure to Obtain Expert Witness Testimony*

Anderson next attacks his counsel's performance as deficient for failure to "use expert testimony to rebut state's expert witness." Doc. 3 at 6.

> Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. [Citation omitted]. Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution.

*Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1982). "Thus, to prevail on an ineffective assistance of counsel claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citing *Bray v. Quarterman*, 265 F.App'x. 296, 298 (5th Cir. 2008).

Again, Anderson fails to make the required showing. He has not supplied the testimonial affidavit of an expert, much less proven that the uncalled witness would have appeared and testified favorably to his case. His IAC claim premised upon his counsel's failure to call an expert witness should be rejected accordingly.

### *(iv)    Failure to Present a Complete Defense*

Anderson claims his counsel was ineffective for failing to present a complete defense. Doc. 3 at 12. Although not totally clear, the impetus for this claim appears to be a trial court ruling regarding the admissibility of the immigration status of Margarito Leon-Hernandez. Leon-Hernandez, a former boyfriend of the victim (sometimes referred to by her last name, Dunn), was with the victim when Anderson arrived at her trailer, and he witnessed the assault while also taking some blows from Anderson himself. *Anderson*, 2017 WL 5897903, at *1-2. At trial Anderson sought to show that Leon-Hernandez was the assailant. Accordingly, Anderson's counsel attempted to probe into Leon-Hernandez's immigration status—the thought being that the victim might have lied about Leon-Hernandez's involvement in the crime to prevent his deportation. *See* Doc. 17-1 at 66-68. However, the trial judge ruled that such testimony would open the door to evidence of Anderson's prior assault of the victim. *See* Doc. 17-1 at 70. Based on that ruling, Anderson's counsel elected not to pursue the immigration-status line of questioning. *See* Doc. 17-1 at 74.

Anderson's counsel's determination that evidence of the prior assault would be more damning than the immigration evidence would be beneficial is a strategic decision; that is, one that "is expected, on the basis of sound legal reasoning, to yield some benefit or avoid some harm to the defense." *St. Aubin v. Quarterman*, 470 F.3d 1096, 1103 (5th Cir. 2006) (internal quotation marks and citation omitted). And any "strategic decisions" made by trial counsel "must be given a strong degree of deference." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017). Anderson fails to overcome that deference due here. Thus, the TCCA's rejection of this IAC claim was not an unreasonable application of the *Strickland* standard.

Further, to the extent that Anderson is claiming that his counsel was ineffective for failing to object to the trial court's refusal to allow alternative-perpetrator evidence without also opening the door to the previous assault, his claim is meritless, as Anderson's trial counsel did object, but his objection was overruled. *See* Doc. 17-1 at 73. Anderson fails to explain how further objection would have changed the outcome; indeed, *Strickland* imposes no duty on counsel to make frivolous objections. *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998). Anderson's IAC claim premised upon his counsel's alleged failure to present a complete defense is meritless and should be denied.[1]

### (v) Failure to Obtain DNA Evidence

Anderson claims that his counsel was ineffective for failing to "file motion for DNA testing for evidence collected at the crime scene." Doc. 3 at 14. He notes that throughout his trial, the State alleged that blood was "all over the crime scene of the alleged victim's home," that the evidence collected had suspected blood "all over" it, and that "DNA" swabs were taken from this collected evidence. Doc. 3 at 14. He speculates that "the results from the testing would have established by a pre-ponderance [sic] of the evidence that Petitioner would not have been prosecuted or convicted." Doc. 23 at 18.

---

[1] In his reply brief, Anderson appears to shift the focus of the failure-to-present-a-complete-defense claim from his counsel to the trial court, arguing that the trial court's ruling regarding the admissibility of Hernandez's immigration status deprived him of his Due Process right to present a complete defense under *Crane v. Kentucky*, 476 U.S. 683. Doc. 23 at 17. First, this Court's "Order Requiring Respondent to Answer" specifically prohibits new allegations of fact or grounds for relief raised for the first time in a reply brief. *See* Doc. 6. So, the Court does not consider this new claim. But even if it did, it is meritless because Anderson has not shown that he was prevented from presenting a defense. The trial court held that Anderson *could* present evidence concerning Hernandez's immigration status, but that this opened the door to evidence concerning Anderson's prior assault on the victim. Anderson points the Court to no authority for the proposition that the right to present a defense means a criminal defendant may present any evidence he wishes without strategic consequences.

Anderson's failure-to-test IAC claim fails for at least two reasons. First, the record shows that Anderson's counsel sought to create reasonable doubt through the *absence* of DNA evidence. As the State points out, trial counsel told the court that he was going to examine the evidence; explained to the venire panel that many cases are determined by what the jury is not shown, specifically when there is an absence of DNA; cross-examined two of the State's witnesses on why DNA samples were not tested; and referenced the lack of DNA extensively in his closing argument. *See* Doc. 17-1 at 27-30, 41-58, 192-195. Clearly, trial counsel's strategy was to raise concerns about the police investigation and, accordingly, Anderson's guilt. This strategic decision is afforded a strong degree of deference and may not be the basis of an ineffective assistance of counsel claim unless "counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.'" *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995) (citation omitted); *see also Strickland*, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). Here, by highlighting the lack of DNA testing by the State, Anderson's trial counsel avoided the risk of an inculpating DNA result, while simultaneously attempting to instill reasonable doubt in the minds of jurors based on inadequacy of the State's investigation. Because this strategy was not objectively unreasonable, the TCCA's rejection of the failure-to-test IAC claim was not an unreasonable application of *Strickland*.

Secondly, Anderson only speculates that the DNA evidence would have exonerated him. Such speculation is insufficient to show prejudice under *Strickland*. "Mere speculation regarding what a DNA analysis may have shown is not sufficient to establish deficient performance on the part of the petitioner's attorney." *Roddy v. Cain*, 11-CV-00730-BAJ-RLB, 2015 WL 1276460, at *10 (M.D. La. Mar. 19, 2015), *aff'd sub nom. Roddy v. Vannoy*, 671 Fed. Appx. 295 (5th Cir.

2016) (citing *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (rejecting claim of alleged deficient performance for failure to test for "powder burns" where the petitioner "merely asserts that there might have been powder burns")).

Accordingly, Anderson's failure-to-test IAC claim also should be rejected.

### *(vi)  Failure to Object to Jury Instructions*

Anderson also claims that his counsel was ineffective for failing to object to the jury charge, specifically to the use of the term "sharp object." Doc. 3 at 15.  In pertinent part, the jury instruction stated:

> Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about December 6, 2014 in Dallas County, Texas, the defendant, Willie Renard Anderson, Jr. did (1) intentionally, knowingly, or recklessly cause serious bodily injury to Katherine Dunn, hereinafter called complainant, by striking complainant with a hand, or by cutting complainant with a piece of broken mirror, or a knife, or a sharp object OR (2) intentionally, knowingly, or recklessly cause bodily injury to Katherine Dunn, hereinafter called complainant, by striking complainant with a hand, or by cutting complainant with a piece of broken mirror, or a knife, or a sharp object, and said defendant did use a deadly weapon, to wit: a hand, or a piece of broken mirror, or a knife, or a sharp object, during the commission of the assault, then you will find the defendant guilty of aggravated assault as alleged in the indictment.

Doc 17-1 at 16.

Anderson appears to argue that the jury charge was flawed in that it allowed for a potential non-unanimous verdict in violation of his Due Process rights, so his counsel was ineffective for failing to object to it.  *See* Doc. 3 at 7, 15.  This argument, however, is meritless as discussed below in connection with Anderson's Due Process claim.  And given that lack of merit, Anderson's counsel was not ineffective for failing to object to the jury instructions on that basis.  *See Green,* 160 F.3d at 1037.[2]

---

[2] Anderson also appears to argue in his reply brief that the inclusion of "sharp object" was unnecessary in the jury instructions because the only evidence provided was that a "mirror" was

10

### *(vii)   Ineffective Assistance of Appellate Counsel*

Anderson argues that the trial court lacked jurisdiction over his case due to defects in the grand jury proceedings and that his appellate counsel was ineffective for failing to raise this issue on appeal. Doc. 3 at 14. He also argues that his appellate counsel was ineffective for failing to raise the argument that the State improperly "bolstered" the victim's testimony by showing her a picture (Exhibit 115) of Anderson, after she identified him at trial. *See* Doc. 3 at 13-14; Doc. 17-1 at 37. "To make out a claim for ineffective assistance of appellate counsel, a defendant must show (1) 'that counsel's performance was deficient' and (2) 'that the deficient performance prejudiced the defense.'" *Higgins v. Cain*, 720 F.3d 255, 260-61 (5th Cir. 2013) (citations omitted). When evaluating an appellate counsel IAC claim, the court first assesses whether counsel failed to raise a nonfrivolous issue that was clearly stronger than the issues raised on appeal. *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Appellate "[c]ounsel need not raise every nonfrivolous ground of appeal, but should instead present solid, meritorious arguments based on directly controlling precedent." *Ries v. Quarterman*, 522 F.3d 517, 531-32 (5th Cir. 2008) (internal quotation marks and citation omitted). Here, the TCCA's rejection of this claim was not an unreasonable application of *Strickland* since, as discussed in more detail below, Anderson's jurisdictional argument is meritless.

As for the argument that appellate counsel was ineffective for failing to raise the "bolstering" argument, the TCCA's rejection of the same was not an unreasonable application of *Strickland*. The State introduced a photograph of Anderson to the victim at trial because she had

---

used to attack the victim, and the term "mirror" was already present in the jury instruction. Doc. 23 at 21. But this Court's "Order Requiring Respondent to Answer" specifically prohibits new allegations of fact or grounds for relief raised for the first time in a reply brief. *See* Doc. 6. Thus, the claim that Anderson's trial counsel was ineffective for failing to object to the inclusion of "sharp object" because there was no evidence of a sharp object other than a mirror is rejected.

11

only 20 percent vision in one of her eyes and could not see Anderson to identify him. Doc. 17-1 at 35-38. As the TCCA has explained:

> "Bolstering" may perhaps be understood a little more precisely to be any evidence the sole purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing "to make the existence of [a] fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *See* Rule 401, *supra*. Accordingly, evidence that corroborates another witness' story or enhances inferences to be drawn from another source of evidence, in the sense that it has an incrementally further tendency to establish a fact of consequence, should not be considered "bolstering."

*Cohn v. State*, 849 S.W.2d 817, 819-20 (Tex. Crim. App. 1993).

In this instance, as the photograph tended to, even incrementally, further a fact of consequence—Anderson's identity—the trial court correctly concluded that it was not used to bolster under Texas law. Thus, Anderson fails to show that his counsel was unreasonable in failing to raise the argument. *See Higgins*, 720 F.3d at 265 (emphasizing that appellate counsel is only required to raise meritorious arguments). Anderson also fails to show how the TCCA's rejection of the appellate IAC claim was an unreasonable application of *Strickland*.

    **B.**    **Actual Innocence**

Anderson next claims that he is "legally actual [sic] innocence," and that no evidence links him to the aggravated assault. Doc. 3 at 6. Absent an independent constitutional violation, however, claims of actual innocence do not state a basis for federal habeas corpus relief. *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Foster v. Quarterman*, 466 F.3d 359, 367-68 (5th Cir. 2006) ("actual innocence is not an independently cognizable federal-habeas claim"). "Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence." *Herrera v. Collins*, 506 U.S. 390, 401 (1993).

"In addition, even if a truly persuasive claim of actual innocence could be a basis for relief, the Supreme Court made clear that federal habeas relief would only be available if there was no state procedure for making such a claim." *Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003) (citing *Herrera*, 506 U.S. at 417). But Texas habeas law recognizes claims of actual innocence. *Ex parte Elizondo*, 947 S.W.2d 202, 205 (Tex. Crim. App. 1996). Indeed, the state has already provided a forum in which Anderson's claim of actual innocence was reviewed and denied. And, even if Anderson's actual innocence claim is considered a constitutional one, he fails to demonstrate that the state court's decision was (1) contrary to or involved an unreasonable application of clearly-established federal law, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). *See also* § II D, *infra* ("Sufficiency of the Evidence"). Thus, Anderson's actual innocence claim must be rejected.

### C. Nonunanimous Jury Verdict

Anderson claims that his jury verdict was not unanimous and therefore was violative of the Fifth, Sixth, and Fourteenth Amendments. More specifically, Anderson contends that because the trial court used a "disjunctive" jury charge, the State was relieved of proving each essential element of the offense charged. Doc. 3 at 7. Like the State, the Court understands Anderson to complain that the jury instruction did not require the jurors to unanimously decide what he used as a deadly weapon. This claim lacks merit.

The Sixth Amendment to the Constitution guarantees that a federal or state criminal jury cannot convict unless it unanimously finds that the Government has proved each element of the charged offense. *Ramos v. Louisiana*, 140 S.Ct. 1390, 206 L.Ed.2d 583 (2020); *Richardson v.*

*United States*, 526 U.S. 813, 817 (1999).³  But a disagreement about "which of several possible sets of underlying brute facts make up a particular element"—in other words, "which of several possible means the defendant used to commit an element of a crime"—does "not matter as long as all 12 jurors unanimously conclude[] that the Government ha[s] prove[d] the necessary related element…"  *Richardson*, 526 U.S. at 817.

In *Mathis v. United States*, 136 S.Ct. 2243, 2249 (2016), the Supreme Court rejected the very argument that Anderson appears to make here:

> To use a hypothetical adapted from two of our prior decisions, suppose a statute requires use of a "deadly weapon" as an element of a crime and further provides that the use of a "knife, gun, bat, or similar weapon" would all qualify. *See Descamps*[ *v. U.S.*], 570 U.S. at -----, 133 S.Ct., at 2289; *Richardson*, 526 U.S., at 817, 119 S.Ct. 1707.  Because that kind of list merely specifies diverse means of satisfying a single element of a single crime—or otherwise said, spells out various factual ways of committing some component of the offense—a jury need not find (or a defendant admit) any particular item: A jury could convict even if some jurors "conclude[d] that the defendant used a knife" while others "conclude[d] he used a gun," so long as all agreed that the defendant used a "deadly weapon."  *Ibid.*; *see Descamps*, 570 U.S. at ----, 133 S.Ct., at 2288 (describing means, for this reason, as "legally extraneous circumstances").  And similarly, to bring the discussion back to burglary, a statute might—indeed, as soon discussed, Iowa's burglary statute does—itemize the various places that crime could occur as disjunctive factual scenarios rather than separate elements, so that a jury need not make any specific findings (or a defendant admissions) on that score.

*Mathis*, 136 S.Ct. at 2249.

In Anderson's case, the penal code provides in pertinent part: "[a] person commits an offense if the person commits assault as defined in § 22.01 and the person: (1) causes serious

---

³ The Supreme Court has not determined whether *Ramos*—which clarified that the Sixth Amendment right to a unanimous jury verdict applies with full force to the states—applies retroactively.  *See Ramos*, 140 S.Ct. at 1407.  The Court expresses no opinion on that issue here, as it is not necessary to resolve for purposes of Anderson's habeas application.  *Ramos* dealt only with the issue of *who* the unanimity requirement applied to—not what the requirement entailed.  As noted, the Supreme Court has spoken on the issue of what unanimity means as far as agreement as to the elements of a crime.  Those cases thwart Anderson's claim.

14

bodily injury to another, including the person's spouse; or (2) uses or exhibits a deadly weapon during the commission of the assault." TEX. PENAL CODE ANN. § 22.02(a)(2). Thus, the use of a deadly weapon is a potential element of aggravated assault, but the jury need not agree on the deadly weapon used to satisfy the unanimity requirement. *See Mathis*, 136 S.Ct. at 2249. To the extent that Anderson argues that the jury instruction violated his right to a unanimous jury by allowing conviction without consensus as to what deadly weapon he used, his argument lacks merit, and the TCCA's rejection of it was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d).

### D. Sufficiency of the Evidence

Anderson next claims that his "Fourteenth Amendment right to Due Process was violated when the trial court presented no evidence to support his conviction and thus failed to prove beyond a reasonable doubt any guilt." Doc. 3 at 7. For a sufficiency-of-the-evidence claim, a federal habeas court considers whether, viewing the evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard is applied with "explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16, and all credibility choices and conflicting inferences are to be resolved in favor of the verdict. *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999). In addition, the AEDPA imposes a "twice-deferential standard" when a federal court reviews a state prisoner's claim challenging the sufficiency of the evidence. *Parker v. Matthews*, 567 U.S. 37, 43 (2012). "[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state

15

court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (citations omitted). Here, the state appellate court summarized the evidence supporting the verdict:

> While she was in the hospital, Dunn told both the police and Wheeler that Anderson was the person who assaulted her. At trial, Dunn testified repeatedly that Anderson was the person who assaulted her. However, when asked whether she saw Anderson in the courtroom, Dunn responded she could not see, had only "20 percent seeing in my eye," and had not brought her glasses. The trial court allowed Dunn to leave the witness stand to "take a look around."
>
> Dunn said, "I think that's him over there in the white." The prosecutor then instructed Dunn "to take a look where you can see." Anderson objected to the prosecutor coaching Dunn. Dunn then stated, "I mean, that's him over there." After being instructed to "keep her voice up," Dunn repeated, "I'm thinking that's him right there." The trial court indicated Dunn was "pointing over in some direction." Dunn responded, "[r]ight there." The prosecutor asked Dunn to describe an item of clothing the person she had identified was wearing, and Dunn stated the person was wearing a "black shirt." The prosecutor then asked what chair the person Dunn had identified was sitting in, and Dunn responded, "[t]hird one on the right-hand side." The prosecutor then showed Dunn State's Exhibit 15, and asked Dunn if she recognized the person depicted in the photograph. Dunn responded the person was "Willie Anderson."
>
> Wheeler testified he began dating Dunn prior to the assault. He saw Anderson in the vicinity of Dunn's trailer on several occasions. One day shortly before the assault, Wheeler was at Dunn's trailer and saw Anderson walking down the sidewalk. Wheeler asked Dunn about Anderson, and learned that she had been in a relationship with him. On one occasion, Anderson approached Wheeler at a Chevron station and said he was "good if a relationship you and I and Kathy." Wheeler responded there could only be a relationship between him and Dunn or between Anderson and Dunn, and indicated he would meet Anderson at Dunn's trailer. Anderson told Dunn about what he had discussed with Wheeler, and Dunn responded she had already told Anderson she wanted to be with Wheeler. The expression on Anderson's face made Wheeler think that Anderson "didn't take it too well." Wheeler identified Anderson in court.
>
> Darren Hodge, an investigator for the Dallas County District Attorney's Office, identified Anderson as the person he had taken fingerprints from during the trial. According to Hodge, when a person is arrested and brought to the Dallas County Jail, a "blue-back" is prepared. The "blue-back" contains information on the individual's name, race, sex, and date of birth, and contains fingerprints and a photograph taken of the individual at the time of the arrest. Hodge compared the fingerprints he took from Anderson during trial to those contained in the "blue-

16

>   back" following Anderson's arrest. The fingerprints matched and, in Hodge's opinion, Anderson was the person arrested. Further, the photograph taken when Anderson was arrested was the same photograph Dunn had identified during her testimony as depicting Anderson.

*Anderson*, 2017 WL 5897903, at *2-3 (modifications in original).

Upon review, the Court finds that the evidence presented at trial supports the conviction. The victim identified Anderson as the assailant shortly after the assault and again at trial. *Anderson*, 2017 WL 5897903, at *2-3. Further, another witness, Wheeler, testified that he frequently observed Anderson in the vicinity of the victim's trailer, and Anderson "didn't take it too well" when informed that the victim wanted to be with Wheeler and not him. *Anderson*, 2017 WL 5897903, at *2-3.

Thus, the state habeas court's denial of the insufficiency-of-the-evidence claim was not objectively unreasonable, and the claim should be denied.

### E.   Prosecutorial Misconduct

Anderson next claims that the State "presented false evidence into the record" and "induced their star witness" to commit perjury. Doc. 3 at 11. The proper standard on federal habeas review for evaluating claims of prosecutorial misconduct is whether the alleged misconduct "'so infected the [trial] with unfairness as to make the resulting [conviction] a denial of due process.'" *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000) (quoting *Ables v. Scott*, 73 F.3d 591, 592 n.2 (5th Cir. 1996) (further citation omitted). The misconduct must render the trial fundamentally unfair. *Barrientes*, 221 F.3d at 753. "A trial is fundamentally unfair if 'there is a reasonable probability that the verdict might have been different had the trial been properly conducted.'" *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992) (internal quotation marks omitted).

A state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. *See Giglio v. United States*, 405 U.S. 150, 153 (1972). The petitioner must show that (1) the testimony was false, (2) the state knew it was false, and (3) the testimony was material. *See Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993). Perjured testimony is material when "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Barrientes*, 221 F.3d at 756.

Anderson appears to claim that the victim committed perjury by testifying that she had been cut and beaten with a mirror. *See* Doc. 23 at 32. But Anderson presents no cogent argument that this testimony was false, much less that the State knew it was false or that the testimony was material. His claim concerning the use of perjured testimony is too conclusory to support federal habeas relief. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) ("We are thus bound to re-emphasize that mere conclusory allegations do not raise a constitutional issue in a habeas proceeding.") (citation omitted). The TCCA's rejection of this claim did not result in a decision that was (1) contrary to or involved an unreasonable application of clearly-established federal law, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d).

### F.   Jurisdiction of Trial Court

Anderson claims that the trial court lacked jurisdiction to try, convict, and sentence him, because the "grand jury indictment had not been returned by a legally impaneled grand jury…" Doc. 3 at 11. But there is no federal constitutional right to a grand jury indictment before trial in state criminal proceedings. *Wilkerson v. Whitley*, 28 F.3d 498, 503 (5th Cir. 1994) ("the Supreme Court has concluded that neither the Grandy Jury Clause of the Fifth Amendment nor

the Due Process Clause of the Fourteenth Amendment requires the state to afford the accused the right to grand jury review before trial") (citation omitted).

Further, although Anderson's precise issue with the grand jury proceedings in his case are unclear, to the extent that he argues the proceedings were tainted because they were not recorded, as the State notes, "[t]here is no requirement, statutory or otherwise, that Grand Jury testimony be recorded and transcribed." *Perez v. State*, 590 S.W.2d 474, 478 (Tex. Crim. App. 1979), *cert denied*, 446 U.S. 937 (1980). Further, to the extent that Anderson argues the grand jury proceedings were improper because the grand jury acted on hearsay evidence, this is again a baseless argument. A defendant can be required to stand trial and a conviction sustained where only hearsay evidence was presented to the grand jury that indicted the defendant. *Costello v. United States*, 350 U.S. 359, 363 (1956).

Therefore, Anderson's claim concerning the trial court's jurisdiction is meritless and should be dismissed.

### III.   CONCLUSION

For the foregoing reasons, Anderson's habeas corpus petition should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on May 13, 2021.

*[signature]*
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).